UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| KIMBERLY PORTER and DAKOTA PORTER, ) </br> ) </br> Plaintiffs, ) </br> ) </br> V. ) </br> ) </br> STATE FARM FIRE AND CASUALTY COMPANY, *et al.*, ) </br> ) </br> Defendants. ) | Civil No. 3:22-cv-00007-GFVT </br></br> **MEMORANDUM OPINION** </br> **&** </br> **ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on the Plaintiffs' Motion to Remand and Motion for Leave to Amend the Complaint. [R. 6; R. 12.] After the Porters' home was destroyed in a fire, they filed a claim under their insurance policy with State Farm. [R. 1-1 at 7.] They then brought this action, alleging that State Farm did not reimburse them for all of their covered losses and that the Defendant Agents negligently failed to inform them that their reimbursement coverage was insufficient. *Id.* at 10-12. State Farm removed the action to this Court, claiming the non-diverse Defendant Agents were fraudulently joined.[1] [R. 1.] The Porters disagree and ask the Court to remand the case back to state court. [R. 6.] They also ask to amend their complaint to name a third insurance agent as a Defendant. [R. 12.] For the following reasons, the Court **DENIES** the Plaintiffs' Motions to Remand and Amend.

I

The Porters' home in Shelbyville, Kentucky was destroyed by a fire on Christmas Day in 2020. [R. 1-1 at 4.] The home was protected by a homeowners policy that the Porters purchased

---

[1] For clarity, the Court will refer to the Defendants collectively as "State Farm" throughout this Order.

from State Farm on April 29, 2020. *Id.* The policy included coverage for the cost of replacing the home, which was capped at $242,000. [*See* R. 10-1 at 3; R. 10 at 3.] Shortly after the fire, the Porters notified their agent at the time, Defendant Stivers, of their need to replace the home using their replacement cost coverage. [R. 10-1 at 7.]

      The Porters brought this action in Shelby Circuit Court, bringing various claims against State Farm and Agents Haines and Stivers. They allege State Farm paid them less than the policy limits and the actual cost of replacing the home and that their replacement cost coverage was inadequate. [R. 1-1 at 7.] State Farm promptly removed the action to this Court. [R. 1.] It recognizes that the complaint does not establish diversity jurisdiction on its face because the Plaintiffs and Defendants Haines and Stivers are all Kentucky citizens. [*Id.* at 2-3.] However, they claim Mr. Haines and Ms. Stivers were fraudulently joined, requiring the Court to ignore their citizenship for purposes of establishing diversity. *Id.* If the Court were to ignore those Defendants, there would be diversity of citizenship because State Farm is incorporated and has its principal place of business in Illinois. *Id.* at 2. The Porters do not challenge the Defendants' assertion that the amount in controversy is greater than $75,000.

      The Porters moved to remand the case to Shelby Circuit Court, arguing they properly joined Mr. Haines and Ms. Stivers so there is no diversity between the parties. [R. 6.] State Farm disagrees and claims that the Porters have not stated a colorable claim against the agents. [R. 10.] One specific argument in their briefing was that Mr. Haines's role as an insurance agent ended before the Porters obtained their homeowners policy, so no claim against him regarding that policy is appropriate. [R. 10 at 2-3.] The Porters then filed a Motion to Amend their Complaint to include Mr. Hernan and his agency as Defendants because State Farm indicated he

2

took over their policies. [*Id.*; R. 12.] State Farm objects to this amendment, claiming the proposed changes are futile. [R. 14.]

State Farm also filed a Motion to Strike the Plaintiffs' Reply brief in support of their Motion to Remand or, in the alternative, for leave to file a sur-reply. [R. 13.] Because the Porters raised new arguments in their Reply, the Court granted State Farm leave to file a sur-reply. [R. 18.] State Farm has done so, and the matter is now ripe for review. [R. 20.]

## II

The pending motion to remand questions the court's subject matter jurisdiction over this action. Without subject matter jurisdiction, the Court is powerless to resolve any other claims. *See Am. Telecom Co., LLC v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998)). Accordingly, the Court must first establish its jurisdiction by determining whether the non-diverse defendants named in the original complaint were fraudulently joined. *See Gould, Inc. v. Pechiney Ugine Kuhlmann*, 853 F.2d 445, 450 (6th Cir. 1988); *Anderson v. Merck & Co.*, 417 F. Supp. 2d 842, 844 (E.D. Ky. 2006) (using this approach when faced with a similar procedural posture).

### A

#### 1

The Porters argue this case should be remanded to Shelby Circuit Court because Defendants Haines and Stivers are Kentucky citizens, like the Porters, so there is no diversity jurisdiction. [R. 6.] A defendant may only remove a civil action brought in state court to federal court if the federal court could have exercised original jurisdiction over the action. *See* 28 U.S.C. §§ 1441, 1446. This court has original federal question jurisdiction over civil actions which arise under the "Constitution, laws, or treaties" of the United States, 28 U.S.C. § 1331.

This Court also has original "diversity" jurisdiction over all civil actions when "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and the dispute is between" parties who are "citizens of different states." *See* 28 U.S.C. § 1332(a).

Because federal courts are courts of limited jurisdiction, any doubts regarding federal jurisdiction should be construed in favor of remanding the case to state court. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–109 (1941); *Cole v. Great Atlantic & Pacific Tea Co.*, 728 F. Supp. 1305, 1307 (E.D. Ky. 1990) (citations omitted). In determining the appropriateness of remand, a court must consider whether federal jurisdiction existed at the time the removing party filed the notice of removal. *Ahearn v. Charter Twp. of Bloomfield*, 100 F.3d 451, 453 (6th Cir. 1996). Furthermore, the removing defendant bears the burden of showing that removal was proper. *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 158 (6th Cir. 1993), *rev'd on other grounds by Hertz Corp. v. Friend*, 559 U.S. 77 (2010); *Fenger v. Idexx Laboratories*, 194 F. Supp. 2d 601, 602 (E.D. Ky. 2002) (citations omitted).

The general rule regarding removal based on diversity of citizenship is that there must be complete diversity "both at the time that the case is commenced and at the time that the notice of removal is filed" in order to properly remove the case to federal court. *Jerome-Duncan Inc. v. Auto-By-Tel, LLC*, 176 F.3d 904, 907 (6th Cir. 1999) (emphasis added). Here, the matter in controversy purportedly exceeds $75,000,[2] but the complaint does not satisfy the 28 U.S.C. § 1332 complete diversity requirement. The Porters are both citizens and residents of Kentucky. [R. 1-1 at 4.] Defendant State Farm is considered a resident of Illinois. *Id.* However, Defendants Stivers and Haines are also citizens and residents of Kentucky, defeating diversity in

---

[2] The Complaint does not actually state an amount in controversy. [R. 1-1.] State Farm, in its notice of removal, asserts the amount in controversy exceeds $75,0000. [R. 1 at 6–7.] The Porters do not contest this calculation in their motion to remand. [R. 6.]

4

this matter. *Id*. at 5.

State Farm does not argue that Defendants Haines and Stivers are in fact diverse from the Porters, but asserts that Mr. Haines and Ms. Stivers's citizenship should be ignored because they were fraudulently joined. [R. 1 at 2-3.] Fraudulent joinder is a "judicially created doctrine that provides an exception to the requirement of complete diversity." *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999) (quoting *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998)). This doctrine is used by courts "when the non-removing party joins a party against whom there is no colorable cause of action." *Saginaw Housing Comm'n v. Bannum, Inc.*, 576 F.3d 620, 624 (6th Cir. 2009) (citing *Jerome-Duncan Inc. v. Auto-By-Tel, LLC*, 176 F.3d 904, 907 (6th Cir. 1999)). The "no colorable cause of action" standard is "more lenient" than the 12(b)(6) motion to dismiss standard. *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 433 (6th Cir. 2012). Courts created the doctrine of fraudulent joinder to prevent plaintiffs from asserting claims against nondiverse defendants "for the sole purpose of preventing removal." *McLeod v. Cities Serv. Gas Co.*, 233 F.2d 242, 246 (10th Cir. 1956). If the Plaintiff's claim has no hope of success, then the "fraudulent joinder of non-diverse defendants will not defeat removal on diversity grounds." *Saginaw Housing Comm'n*, 579 F.3d at 624 (quoting *Coyne*, 183 F.3d at 493).

State Farm, the removing party, has the burden of proving fraudulent joinder and must present "sufficient evidence that a plaintiff could not have established a cause of action against [the] non-diverse defendants under state law." *Coyne,* 183 F.3d at 493. To resolve a claim of fraudulent joinder, the district court may "pierce the pleadings" to consider summary judgment-like evidence, but should evaluate that evidence like it would a Rule 12(b)(6) motion to dismiss. *Walker v. Philip Morris USA, Inc.*, 443 F. App'x 946, 954 (6th Cir. 2011). Any contested issues

5

of fact should be construed in the non-removing party's favor. *Id.* Any ambiguities in relevant state law must also be construed in the non-removing party's favor. *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994).

**2**

The Porters claim State Farm has not established fraudulent joinder and asks the Court to remand this case back to Shelby Circuit Court. [R. 6 at 1.] Their complaint brings negligence claims against Mr. Haines and Ms. Stivers, alleging they owed the Porters a duty to ensure that their replacement cost coverage was sufficient to reconstruct their home. *Id.* at 2-3. In response, State Farm elaborates on its belief that Mr. Haines and Ms. Stivers were fraudulently joined. [R. 10.] It argues the Porters do not have a colorable claim against the agents because under Kentucky law, they did not undertake a duty to advise them to obtain increased replacement cost coverage or increase such coverage after the policy was issued. *Id.* at 9-13. In reply, the Porters claim the agents assumed this duty, which is evidenced by the replacement cost reimbursement estimate they filed. [R. 11 at 3.] They do not explain why this estimate proves an assumption of this duty. *Id.* It appears they believe that because they purchased and paid for replacement cost coverage, the agents owed them a duty to provide a "proper estimate" of that cost. *Id.*

The Porters also attached an affidavit of Kimberly Porter to their reply. [R. 11-1.] The affidavit includes allegations that (1) she did not consent to the $242,000 replacement cost estimate and (2) Ms. Stivers represented that she reviewed the Porters' policy and said it "looked fine." *Id.* at 3. State Farm asked the Court to strike the affidavit or grant it leave to file a surreply because this affidavit raised new issues. [R. 13.] The Court allowed State Farm to file a sur-reply, in which it argues neither of the new allegations in the affidavit support the Porters' Motion to Remand. [R. 18; R. 20.] First, it claims the assertion that the Porters did not consent

6

to the $242,000 replacement cost should not be considered because it conflicts with the complaint and does not make their claims against the agents any more well-founded. *Id.* at 1-4. Second, it argues the assertion that Ms. Stivers reviewed and approved the replacement cost coverage does not implicate an implied duty to advise. *Id.* at 5-7. The matter is now ripe for review, so the Court will proceed to determine whether the Porters have a "colorable cause of action" against Mr. Haines or Ms. Stivers.

a

The Court agrees with State Farm that there is no colorable cause of action against Mr. Haines. State Farm submitted a letter showing that Mr. Haines received a promotion and his agency was terminated on December 31, 2019, months before the Porters obtained the homeowners policy at issue in this matter on April 29, 2021. [R. 10 at 2-3; R. 10-4.] The Porters insist they have a claim against Mr. Haines, stating: "although defendants claim that defendant Haines was no longer an agent at the time when the insurance was purchased, plaintiffs still could have reached defendant Haines by telephone. Although he may not have been involved, that is not necessarily so." [R. 11 at 5.]

The policy itself lists the holders' agent as Mr. Hernan, not Mr. Haines. [R. 10-1 at 2.] This is consistent with State Farm's assertion, confirmed by an affidavit from Mr. Haines and his termination letter, that he was no longer working as an insurance agent when the Porters obtained their policy. [R. 10 at 2-3; R. 10-2.] Mr. Haines clarified that he did manage some of the Porters' other policies with State Farm before resigning, but that his clients were transferred after his promotion and he believes the Porters were transferred to Mr. Hernan. [R. 10-2.] The only argument the Porters present to contest State Farm's assertion that Mr. Haines did not sell them

7

their policy is that they "could have" called Haines, so "although he may not have been involved, that is not necessarily so." [R. 11 at 5.]

A mere possibility that the Porters contacted Mr. Haines at some point when attempting to obtain the policy is insufficient to make him liable for negligence. Even if the Porters contacted Mr. Haines as they were attempting to obtain their homeowners policy, the evidence clearly establishes the policy was obtained through Mr. Hernan. [R. 10-1 at 2.] It could not have been obtained through Mr. Haines because his agency was terminated months before the policy was obtained. [R. 10-4 at 3.] Mr. Haines could not have served as the Porters' agent when they obtained the policy on April 29, 2020, so he did not owe them any duty that could give rise to a negligence claim. *Mullins v. Commonwealth Life Ins. Co.*, 839 S.W.2d 245, 248 (Ky. 1992) ("Insurance *brokers* and *agents* owe a standard duty of reasonable care to their clients." (emphasis added)). Accordingly, Mr. Haines was fraudulently joined because the Porters do not have a colorable claim against him.

b

Ms. Stivers was also fraudulently joined. Kimberly Porter's affidavit claims that Agent Stivers "told [Ms. Porter] that she had reviewed the motor vehicle insurance and the homeowners' insurance policies and that they looked fine." [R. 11-1 at 3-4.] In response, State Farm references Ms. Stivers's affidavit, in which she states that the Porters never contacted her and requested her advice regarding their homeowners' policy. [R. 20 at 5.] State Farm contends that a "specific request" for advice is required to create an implied duty to advise and that Ms. Stivers's assurance that the policy was "fine" did not establish this duty. *Id.* at 5-6.

The Porters do not clarify why they believe Ms. Stivers had or undertook a duty to advise them to increase their coverage. In response to State Farm's argument that Ms. Stivers had no

8

such duty, the Porters claim that by purchasing and paying for replacement cost coverage, there is an "inference" that the agents had a duty to provide sufficient coverage. [R. 11 at 3; *see also* R. 6 at 3.] Specifically regarding Ms. Stivers, the Porters argue that "when a lawyer, or any professional including an insurance agent takes over a case, one of the things that professional does is to look over the file to make sure that things are proper." [R. 11 at 6.]

These claims are not accompanied by any legal support and, in fact, are contrary to Kentucky law. Insurance agents generally only owe their clients duties to deal in good faith and carry out their instructions. *Mullins*, 839 S.W.2d at 248. Agents do not have a duty to advise their clients unless they expressly or impliedly "undertake to advise the insured." *Id.* An implied duty arises when (1) the client pays the agent in addition to their policy premium, (2) there is a course of dealing that would make a reasonable agent aware their advice "is being sought and relied on," or (3) the client requests advice. *Id.* (citations omitted).

The Porters have not alleged facts that would satisfy any of these requirements. They state they "paid premiums for replacement costs," but not that they provided Ms. Stivers any consideration specifically in exchange for advising them. [R. 11 at 4.] There is also no indication that the Porters had a history of seeking and relying on Ms. Stivers's advice or requested her advice. Though factual issues and legal ambiguities are construed in the plaintiff's favor, these facts are merely non-existent rather than being contested and Kentucky law clearly states there are no other grounds establishing a duty to advise. *See Walker*, 443 Fed. App'x at 952-53. There is no indication that Ms. Stivers undertook a duty to advise the Porters on the sufficiency of their existing replacement cost coverage, so there is no colorable claim for negligence against her. Ms. Stivers was also fraudulently joined and her residency does not defeat diversity jurisdiction. Because both non-diverse defendants were fraudulently joined,

9

their citizenship is ignored for establishing diversity jurisdiction and the Court does have subject matter jurisdiction over this action. *Coyne*, 183 F.3d at 493.

B

Having determined the Court has subject matter jurisdiction over the *original* complaint, the Court next turns to the Porters' motion to amend. [R. 12.] Amendments to pleadings are governed by Federal Rule of Civil Procedure 15, which provides that even if the party does not seek amendment within the of-right period, a court may grant leave to permit such an amendment and should "freely" do so "when justice so requires." Fed. R. Civ. P. 15(a)(2). The Supreme Court reads this provision broadly and the Sixth Circuit recognizes that "where the underlying facts would support, a motion for leave to amend should be granted, except in cases of undue delay, undue prejudice to the opposing party, bad faith, dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or futility." *Duggins v. Steak'n Shake, Inc.*, 195 F.3d 828 (6th Cir. 1999) (citing *Foman v. Davis*, 371 U.S. 178 (1962)).

State Farm opposes amendment, arguing the proposed changes to the complaint are futile. [R. 14.] Amendment is futile when its proposed changes would not survive a motion to dismiss or motion for judgment on the pleadings. *Miller v. Calhoun Cty.*, 408 F.3d 803, 817 (6th Cir. 2005); *Green v. Bank of Am. Corp.*, 530 F. App'x 426, 428 (6th Cir. 2013). So in deciding whether to grant the Porters leave to amend, the Court must determine whether the proposed amendments to the complaint would survive a motion to dismiss. The significant alterations include (1) allegations that Ms. Stivers met with the Porters and informed them she reviewed their policy and that it was "fine" and (2) the addition of Zachary Hernan and the Zachary Hernan Insurance Agency as defendants. [*See* R. 12, characterizing these as the "major revisions."]

10

**1**

One of the Porters' proposed amendments is that Ms. Stivers had a virtual meeting with Ms. Porter when she became their agent in which she stated she reviewed their policy and that it looked "fine." [*See* R. 10-1 at 12-16; R. 16 at 10.] As explained above, Ms. Stivers did not assume a duty to advise the Porters by making that representation. Insurance agents in Kentucky only have a duty to advise their clients when the client pays for such advice, specifically requests it, or there is a course of dealing in which the client sought and relied on the agent's advice. *Mullins*, 839 S.W.2d at 248. As was true of the original complaint, the proposed changes to the complaint do not establish any of these scenarios. The additional fact that Ms. Stivers set up the virtual meeting in which she made this representation does not establish implied assumption of a duty to advise. Ms. Stivers did not owe the Porters any duty beyond that of reasonable care, so the proposed amendments regarding Ms. Stivers are futile.

**2**

The amended complaint is also futile to the extent it adds Zachary Hernan and the Zachary Hernan Insurance Agency as defendants. [R. 12 at 1.] Part of State Farm's argument in opposition to the Porters' motion to remand was that Mr. Haines, who was originally named as a Defendant and alleged to have sold the Porters their homeowners policy, resigned his state farm agency before the date the policy was purchased. [R. 10 at 3.] It indicated Zachary Hernan took over some of Mr. Haines's policies, including the Porters'. *Id.* The Porters seek to add Mr. Hernan and his agency as defendants as a result. The amended complaint states Mr. Hernan and his agency "knew or should have known at the time when plaintiffs purchased their homeowner's insurance that the cost of reconstructing their home was not in the amount for which coverage was estimated by defendants and that the replacement cost insurance

reimbursement provided for by defendants was inadequate." [R. 12-1 at 10.] State Farm argues this amendment is futile because Mr. Hernan did not have a duty to advise the Porters they should get more replacement cost coverage than the estimated replacement cost at the time the policy was obtained. [R. 14 at 11.]

The Porters rely on *Grigsby* to support their negligence claim against Mr. Hernan. [R. 16 at 11.] The Plaintiff in *Grigsby* alleged he requested a certain form of coverage and that the Defendant insurer negligently placed that coverage on the wrong building. *Grigsby v. Mountain Valley Ins. Agency, Inc.*, 795 S.W.2d 372, 373 (Ky. 1990). The court found the insured proved negligence because agents have a duty to obtain coverage "which in terms and coverage is of the type specified by the insured." *Id.* at 375 (citing 43 Am. Jur. 2d § 141). *Grigsby* is not controlling in this matter. The Porters do not allege that Mr. Hernan failed to obtain coverage they requested, or that they specifically requested a degree of coverage that they were not issued. Rather, they claim the replacement cost coverage they were given was insufficient to actually replace their home when it burned down eight months after the policy was obtained. [*See* R. 12-1 at 2-3, R. 16 at 11-15.] *Grigsby* only requires agents obtain the coverage requested by the insured, not that they anticipate changes in the market that may warrant greater coverage in the future. 795 S.W.3d at 375. The Porters do not provide, and the Court is unaware of, any controlling case that holds as such.

Mr. Hernan did not breach any duty he owed the Porters. He would only be responsible to advise them to increase their replacement coverage if they asked or paid him for such advice, or had a course of dealing with him in which they sought and relied on his advice. *Mullins*, 839 S.W.3d at 248. The amended complaint does not allege any of these situations. [*See* R. 12-1.] Accordingly, Mr. Hernan only owed the Porters a "standard duty of reasonable care." *Assoc. Ins.*

12

*Serv. v. Garcia*, 307 S.W.3d 58, 63 (Ky. 2010). The only allegation that could feasibly support a breach of this duty is that Mr. Hernan:

> knew or should have known that . . . the cost of replacing the home can be . . . in excess of the value of the home . . . when the insurance was purchased and had the resources to investigate that matter and to calculate the additional amount which might be necessary . . . for plaintiffs to obtain full replacement cost reimbursement coverage.

[R. 12-1 at 9-10.] It appears the Porters believe Mr. Hernan should have used software to calculate "additional" coverage necessary to reconstruct the home. [*See* R. 16 at 9.] But the Porters specifically reference the software that was used to calculate the $242,000 replacement cost coverage. *Id.* ("i.e., software like the software used which defendant Lacey Stivers contends was used to calculate the replacement cost estimate in the amount of $242,000.") But as the Porters recognize, that software *was* used to calculate the replacement cost coverage. [*See also* R. 10-3 at 8-9.] Mr. Hernan obtained this valuation and used it to create the policy. It is unclear how he could have breached the limited duty he owed them by using the software the Porters argue he should have used to create a detailed replacement cost estimate and issuing them a policy based on that estimate. The Porters do not establish that by doing so, Mr. Hernan violated a reasonable standard of care. The only additional work Mr. Hernan could have done would be to somehow predict future changes to that replacement cost valuation. But as established above, he had no duty to do so and cannot be held liable for negligence on that ground. Accordingly, the amended complaint does not state a claim for relief insofar as it adds Mr. Hernan and his agency, so it would not survive a motion to dismiss and is therefore futile. *Miller*, 409 F.3d at 817. The Court will deny the Porters' motion to amend.

### III

The Court finds Ms. Stivers and Mr. Haines were fraudulently joined, so it has subject matter jurisdiction over this action and remand is not warranted. Further, the Porters' proposed

amendments to the complaint are futile because they would not survive a motion to dismiss, so the Court denies their motion for leave to amend. Accordingly, it is hereby **ORDERED** as follows:

1. The Plaintiffs' Motion to Remand **[R. 6]** is **DENIED**, and;

2. The Plaintiffs' Motion for Leave to Amend Complaint **[R. 12]** is **DENIED**.

This the 7th day of July, 2022.

*/s/ Gregory F. Van Tatenhove*
Gregory F. Van Tatenhove
United States District Judge

14